IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUDGE'S COPY

Copy
(13)

Carlos Chico Woods, and
Dwight Denmart, et al.

                    Plaintiffs,

          vs.

Martin F. Horn, et al.

                    Respondents

Civil Action No. 1-(V-01)-1078

FILED
HARRISBURG

AUG 1 3 2001

MARY E. D'ANDREA, CLER[K]
Per_____
DEPUTY CLERK

EMERGENCY REQUEST FOR AN
TEMPORARY PRELIMINARY IN-
-JUNCTION IN THE INTERESTS OF
JUSTICE.

AND NOW COMES, The plaintiff <u>Carlos Chico</u>
<u>Woods</u>, Respectfully Requesting That This Honorable
Court's in it's Jurisdiction To <u>GRANT</u> his Emergency
Request For an Temporary Preliminary Injunction,
before sudden death or Permanent Jury To The
Plaintiff occurs. The Plaintiff States The Following in
support of This Request:

1) Plaintiff Woods states That he comes before This
Honorable Court's With a plea for Mercy. Plaintiff states
That The Respondent's at SCI-Frackville have placed his
life in grave <u>danger</u>, by denying him Proper Medical Care

1.

For his cronic illness, called Helicobacter Pylori, which
if Treatment is not given, will cause serious Injury, even
death.

2). Plaintiff states that he was rushed out to the
hospital for complications of this illness a number of Time
and on July 15, 2001 At about 6:30 AM plaintiff woke u
with major pains in his chest and stomach, he complained
That his stomach was blowing up, and the pains increased,
Plaintiff woods Told his celly Norrel Armstrong EM-6453
call the Block C/o cause he was in major pain, when T
C/o came to the cell, My celly informed him that His
celly was having serious pains in his stomach, and that he
needed a nurse fast, The C/o who's name is (Paulukoais),
stated that "There isn't nothing wrong with him, he just
hurting from you Fucking him last night (Joking)", Than about
Fifteen (15) or Twenty (20) minutes later, a Nurse and Three
C/o's came to the plaintiff's cell with a wheel chair, The Nurs
Name (Mary) checked the plaintiff's vital signs and took hi
To the Medical Department in the wheel chair. Plaintiff stat
That he was given Medications To Try and calm the pains, inst
They increased the pains, The plaintiff had To lay in a room on a
Flat hard bed, until the Nurse called a Doctor on the phone, w
knew nothing about the plaintiff or his conditions, plaintiff

1.

Remained in That Room for about a hour or so in pain, befor
They received a call back from The Doctor, who Than Told Th
Nurse To send him To The out side hospital, This procedure
Taken, because The institution is not equipped with the
Facility To Care for inmates until They are sent out
To The hospital. Plaintiff states The infirmary here at
The institution was closed down by The Federal Gover
ment because of Their inadequate ability To care for inmates
Who were cronically ill like The plaintiff. Plaintiff sta
That when he arrived at the hospital, he was seen by a
Nurse, who questioned him about his conditions, and set u
a I.V. To feed him, and To give him medication For The Pains
Plaintiff Than was seen by a doctor who's name was Dr. Blu
This doctor questioned The plaintiff about his conditions,
and ordered That tests be done. such as (Blood Tests a
EX-rays), These Tests weredone, and Dr. Blum Checke
Them himself, Dr. Blum informed The plaintiff That Tests
Came back negative, except for The EX-rays, Dr. Blum stat
That There was something in The plaintiff's stomach, bu
he was unable To detect it because of a gas form Foam,
and The only way To see what it is, and if you still hav
ulcers, is by performing an Endoscopy upper G.I. Tes
So he was going To order That The institution place The
Plaintiff on a Light Diet For Two (2)days, and return hi

3.

in those two (2) days with The plaintiff's entire medical
file To undergo The endoscopy Test. Plaintiff was
sent back To The institution, upon his arrival, The
plaintiff was seen by a nurse who stated That The
Jail doctor wanted To see Me before I went back To
The housing unit. Plaintiff seen some doctor who ha-
a SCI. Dallas I.D. on his shirt, This doctor had inform-
The plaintiff That There is nothing wrong with him, and
That he was only having gas pains, and That The
plaintiff was on every kind of state of The ask
Medication There is To offer, and if The medicatio-
don't work, Than we can't do nothing for you, because
There is nothing wrong with you. Plaintiff Than as-
The doctor about The findings of DR. Blum, The docto-
replie; "That doctor don't know what ████ he's Talking
about, I'M The one with The fifteen (15) years of
expirence, not him"; Than The Doctor Told The plainti-
That They have already removed his "Gallbladder"; for wh-
reason he don't know, because obviously That wasn't
The problem To begin with, So whatever it is that's wrong
with you, "it's your fault, you are causing yourself To
get sick; There is nothing else That we could do for you
so drink water or something.

4.

3). Plaintiff States that on July 23, 2001 he was on The List To see The doctor. On or about 8:30AM The Plaintiff Went in To see DR. O'Conner The Institution's Doctor. Doctor O'conner Checked The Plaintiff Stools Through a rectal examine for possible bleeding. DR. O'Conner also Checked The Plaintiff's Vital Signs, and Told the Plaintiff That there is nothing wrong with him, and That he was Just having Spasms, and That there will be no more Tes no more Medications, or anything else, and That he would assure The Plaintiff That no how bad My pains are, I will not be taken out To hospitals or any other Place, You will not get no More Medical Treatment, because all You have is irritated bowels, and Tenderness in The Stomach, no more will be done for You, O'Kay You Can go now.

4) Plaintiff further States that Prior To The doctors remarks, The doctor was well aware, That The Plaintiff's blood Tests Came back Positive for Helicobacter Pylori, and at a high level, but still he denies To Treat The Plaintiff, and he ordered all of The rest of The Medical Personal, not to do any Thing for The Plaintiff if he Calles To Sick Call Complaining of any Pains.

5)   Plaintiff Now States that it is Clear To both The Plaintiff and This Honorable Court, That if The Plaintiff's Request for A Temporary Preliminary Injunction is not Granted, The Plaintiff Will suffer a Pain slow death, because so far, The Plaintiff's Gallbladder has been removed without cause or explanation; The plaintiff's H. Pylori Disease is not being Treated, plaintiff is clearly being denied The Medical Treatment which is required To cure or fight his infection, and if not Immediately Treated, will cause The plaintiff bodily harm, possibly serious enough To Cause him death, if his request is not Granted.

6) Plaintiff Finally states That he is being Targeted by The staff at SCI. Frackville, and harassed by said Parties. Plaintiff also states That he is ▇▇ even being forced To work in his conditions, he is presently suffering a great deal of pains in The stomach, Chest, and Feet, and he also suffers from Migraine Headaches, in which The Physician Assistants And doctor has denied To Treat The Plaintiff for. Plaintiff states That The Medical Department here is very inadequate, and unable To properly care for cronically ill inmates such as The Plaintiff. Therefore; This Honorable Court's Should Grant The plaintiff's Request for Temporary Prelimin-

6.

Injunction, and order The Respondents To IMMediately Transfer The Plaintiff To a Institution Which is equiped With an Medical Infirmary in which To house 'inmates' like The Plaintiff When his illness Worsen, and Where he can be properly cared for until a doctor has properly examined him. Plaintiff states that this request was Made in a Emergency Form due To The Life threatening Concern.

WHEREFORE; The Plaintiff Woods Respectfully Requests That This Honorable Court's in its' Jurisdict GRANT his Request for an Emergency Tenporary Preliminary Injunction, and Order the Respondent To IMMediate Transfer The Plaintiff Woods, To another Institution That is adequately equipped To Medica house The plaintiff, and order That all of The plaintiff's Medical files be Turned over To The Outside hospital, so that the doctors Who examin The plaintiff Can properly Treat The Plaintiff for his illness before it causes serious bodi Injury To The plaintiff, or death. Plaintiff Finally request that this Honorable Court's To immediately Appoint counsel To represent The Plaintiff in This Matter, so that counsel can secur all of The Plaintiff's Medical Records before They are destroyed, or Misplaced, and To Make sure That Th

7.

Plaintiff upon his Transfer, is Transferred to an adequate institution where he can be Medically attended to and that the plaintiff is properly treated for his illnesses. Plaintiff States that in the interests of Justice and to protect the safety of the plaintiff, this Injunction should be immediately <u>GRANTED</u>, and appointed ▮▮▮▮ Counsel ordered to visit plaintiff and findout what form of Medical attention is immediately needed. Plaintiff thanks this Honorable Court's for its' time and consideration, and prays that this relief is GRANTED. Plaintiff has attached a copy of the original civil complaint, and copies of some information on the plaintiff's illnesses, for the Court's to consider the importance of the granted relief.

DATED: August 07, 2001

Respectfully Submitted

X. *Carlos C. Woods*

Mr. Carlos Chico Woods, Pro-
BY-9729 SCI.Frackville
1111 Altamont Blvd.
Frackville, PA 17931-269

8.

JUDGE'S COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARLOS CHICO WOODS, AND       :
DWIGHT DENMARK,               :
                Plaintiffs'   :
           Vs.                :
                              :
MARTIN F. HORN, Secretary of  :
Corrections, DR. JEFFREY A. BEARD, :
Acting Deputy Secretary of    :
Corrections, Raymond J. Colleran,
Superintendant At SCI.Waymart, :    CIVIL ACTION No.:_____
JOSEPH W. CHESNEY, Superintendant : Jury Trial Demanded.
At SCI.Frackville, John T. Shemo, :
Deputy Superintendant at SCI. :
Waymart, John Kerestes, Deputy :
Superintendant at SCI.Frackville, :
et al., And WILLIAM F. WARD, :
Chairman of The Pennsylvania Board :
of Probation and Parole., et al. :
                Defendants.   :

1-CV-01-1078

FILED
HARRISBURG

AUG 1 3 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

EXHIBIT (A) ORIGINAL
COMPLAINT

COVER PAGE

(1)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARLOS CHICO WOODS, AND          :
DWIGHT DENMARK,                  :
              Plaintiffs'          :
           Vs.                    :
                    :

MARTIN F. HORN, Secretary of     :
Corrections, Dr. JEFFREY A. BEARD, :
Acting Deputy Secretary of    .   :
Corrections, RAYMOND J. COLLERAN, :
Supertintendant at SCI.Waymart,   : CIVIL ACTION No.: _____
JOSEPH W. CHESNEY, Superintendant : Summons To Be Served On Each
At SCI.Frackville, John T. Shemo,  : Defendant In Their Own Individual
Deputy Superintendant at SCI.      : Capacities.
Waymart, JOHN KERESTES, Deputy     :
Superintendant at SCI.Frackville,  :
et al., And WILLIAM F. WARD,       :
Chairman of The Pennsyvania Board  :
Of Probation And Parole., et al.   :
           Defendants.            :

COVER PAGE PART TWO

(2)

## I. PRELIMINARY STATEMENT

This is a civil rights action filed by Carlos Chico Woods, and Dwight Denmark, two state prisoners, for damages and injunctive relief under 42 U.S.C. § 1983, alleging that defendants caused them emotional distress, denied them immediate medical care, and medical malpractice, and negligence in violation of the Eighth Amendment to the United States Constitution, and inhumane conditions of confinement, in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution. Plaintiff Woods also alleges the torts of harassment and infliction of emotional distress  a violation of the Equal Protection Clause, and Cruel and Unusual Punishment of the Fifth; Eighth and Fourteenth Amendments to the Constitution.

## II. JURISDICTION

1. The Court has original jurisdiction over the plaintiffs' claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331(a) and 1343.

2. This Court also has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. § 1367.

3.

## NAMES OF THE DEFENDANTS

1.   Defendant Martin F. Horn, is employed as the Secretary of Corrections for the Pennsylvania Department of Corrections, at 2520 Lisburn Road, P.O. Box 598, Camp Hill, Pa 17001-0598.

2.   Defendant Raymond J. Colleran, is employed as the Superintendent/warden, at the State Correctional Institution SCI.Waymart, at P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

3.   Defendant John T. Shemo, is employed as the Deputy Superintendent for the Facilities Management, at the State Correctional Institution, SCI. Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

4.   Defendant James T. Wynder, Jr., is employed as the Deputy Superintendent for the Department of Centralized Services, for the State Correctional Institution SCI.Waymart, at P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

5.   Defendant Thomas B. Patterson, is employed as the Major for the State Correctional Institution SCI.Waymart, at P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

6.   Defendant Ronald Richards, is employed as the Grievance Coordinator for the State Correctional Institution SCI.Waymart, at P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

7.   Defendant Vito Casella, is employed as the Records Supervisor for the State Correctional Institution SCI.Waymart, at P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

8.   Defendant Joseph Nish, is employed as the facilities Inmate Programs Manager, at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

9.   Defendant Captain Griffins, is employed as one of the facilities Captains, at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

10.   Defendant Robert Bitner, is employed as the Chief Hearing Examiner, for the Pennsylvania Department of Corrections, at 2520 Lisburn Road, P.O. Box 598, Camp Hill, Pa 17001-0598.

11.   Defendant Thomas L. James, is employed as the Chief Grievance Coordinator, for the Pennsylvania Department of Corrections, at 2520 Lisburn Road, P.O. Box 598, Camp Hill, Pa 17001-0598.

12.   Defendant Dr. Jeffrey A. Beard, is employed by the Department of Corrections in Pennsylvania, as the Acting Deputy Secretary of Corrections at 2520 Lisburn Road, P.O. Box 598, **Camp Hill**, Pa 17001-0598

12.    Defendant Donald Fiske, is employed as the Corrections Health Care Administrator, at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

14.    Defendant Dr. Tamrat Belele, MD., is employed as the Medical Director and head doctor at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

15.    Defendant Jeannan Lumas, is employed as one of the physician assistants, at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

16.    Defendant Neil Heffernan, is employed as one of the physician assistants, at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

17.    Defendant Noel Booth, is employed as one of the Lieutenants at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa. 18472-0256.

18.    DefendantElaine Martin, is employed as one of the Unit Managers at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

19.    Defendant Milton Friedman, is employed as one of the Unit Managers at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

20.    Defendant Robert Long, is employed as one of the Corrections Counselors, at the State Correctional Institution SCI. Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

21.    Defendant Martin J. Walsh, is employed as the Principal at the State Correctional Institution, SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

22.    Defendant Barbara Derrick, is employed as the Chief Librarian at the STate Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

23.    Defendant Patricia Colachino, is employed as the Assistant Librarian at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

24.    Defendant  Joseph G. Sawchuk, is employed as one of the Correctional Officers, at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

25.    Defendant John Doe aka (C/O Russian), is employed as one of the Coerrectional Officers at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

5.

26.    Defendant John Doe aka (C/O A. Bebla), is employed as one of the Correctional Officers at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

27.    Defendant Lillian Rollison, is employed as the Mail Inspector Supervisor, at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

28.    Defendant John Doe II, is employed as one of the Corrections Officers at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

29.    Defendant John Doe III, is employed as one of the Correctional Officers at the State Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

30.    Defendant John Doe IV, is employed as one of the Corrections Officers at the STate Correctional Institution SCI.Waymart, P.O. Box 256, Route 6, Waymart, Pa 18472-0256.

31.    Defendant John Doe V, is employed as the Security Captain at the State Correctional Institution SCI.Waymart, PA 18472-0256.

32.    Defendant Joseph W. Chesney, is employed as the Superintendant/Warden at the State Correctional Institution SCI.Frackville, 1111 Altamont Blvd., Frackville, Pa 17931-2699.

33.    Defendant John Kerestes, is employed as the Deputy Superintendant For Facilities Management, at the State Correctional Institution SCI. Frackville, 1111 Altamont Blvd., Frackville, Pa 17931-2699.

34.    Defendant Joseph Miller, is employed as  the Major of the Guards, at the State Correctional Institution SCI.Frackville, 1111 Altamont Blvd., Frackville, Pa 17931-2699.

35.    Defendant John Doe VI, aka (C/O Kiefaber), is employed at the State Correctional Institution SCI.Frackville, 1111 Altamont Blvd., Frackville, Pa 17931-2699, as one of the Corrections Officers.

36.    Defendant Kevin Kane, is employed as the Hearing Examiner at the State Correctional Institution SCI.Frackville, 1111 Altamont Blvd., Frackville, Pa 17931-2699.

37.    Defendant William F. Ward, is employed as the Chairman of the Board of Probation and Parole for the State of Pennsylvania, at 1101 South Front Street, Suite 5300, Harrisburg, Pa 17104.

38.    Defendat Mike Fisher, is employed as the Pennsylvania State Attorney General, at 16th Floor, Strawberry Square, Harrisburg, Pa 17120.

6.

## STATEMENT OF CLAIM

### Count I
### First Cause of Action

### (Inadequate Medical Care)

1. **The plaintiffs'** state that they are being denied proper medical **treatment** by defendants' Dr. Tamrat Bekele, MD., and Donald Fiske. Plaintiffs' state that the defendants' are using them as medical experiments, by diagnosing the plaintiffs' with a number of drugs, to see which one will work to cure the plaintiffs' illnesses. This is being done solely because the defendants' deny to take the proper medical tests, to determine what it is that the plaintiffs' are **infected** with. Defendants' have increased the plaintiffs' pain and suffering, by their denial to properly treat the plaintiffs' present conditions. Plaintiffs' state that the defendants' are housing inmates in their facilities that they are unable to care for due to the lack of proper medical equipment, and doctors. Their is only one doctor for the entire institution, and it has caused the amount of deaths and illnesses to raise, and because of defendants' continue to deny the plaintiffs' and other inmates' of the proper medical care, and because the defendants' refuse to perform the proper tests on the plaintiffs' and other inmates', the toll of deaths and illnesses are continuing to raise, and the plaintiffs' continue to become more ill.

2. Plaintiffs' state that the defendants' Jeannan Lumas and Neil Heffernan, have prescribed a number of different types of medications without first performing tests on the plaintiffs', and without first consulting with the doctor. These medications have caused the plaintiffs' to become more ill, and after the plaintiffs' had informed the defendants' of the medical reactions that they were encountering, the defendants' would only give the plaintiffs' a new type of medication, and tell the plaintiffs' to try this and if it does not work, come back. Again; plaintiffs' state that the only reason they are being denied the proper medical treatment and proper tests, is because the defendants' have a lack of staff doctors, and because of the present population.

· the present number of population that the institution has at this time.

3.   Plaintiff Woods states that he has been going back and forth to the
     medical department for the same illnesses for the past twenty (20)
     months, in which the plaintiff complained of stomach and chest pains,
     and at times headaches, and all the defendants' would tell the
     plaintiff that all he had was gas, and would prescribe the plaintiff
     a number of different types of medications, without first performing
     tests on the plaintiff. Plaintiff states that all of the different
     types of medications he was given, caused him to become seriously
     ill, up to the point where the plaintiff had to be rushed out to
     the outside hospital for an abdoninal bleeding, which was later
     determined that the plaintiff had an ulcer, and an infection in his
     stomach. Plaintiff states that he is presently still suffering
     abdoninal pains, and stomach pains, which are increasing each day,
     the defendant has been given the same types of medications that he
     was given in the past, for the third time, along with a new type of
     medication that is suppose to be for the plaintiff's ulcer, but the
     plaintiff continues to experience the same pains, which have increased
     over the period of time. Plaintiff states that he has been back to
     medical department comlaining of those pains, and the defendants'
     just continue to ignore his illnesses, and the plaintiff's requests
     for tests and treatment. Plaintiff states that his bowel movements
     continue to change colors, and on 01/17/2001, the plaintiff's bowel
     movement was a high lime green color, and the plaintiff informed
     the defendants' of that movement, and still no new tests have been
     performed on the plaintff to determine the proper treatment. Plaintiff
     states that he is presently being denied the proper medical treatment.

4.   Plaitiff Denmark states that he has exposed to Hepatitis (C), and
     has been effected ever since he was incarcerated at the State
     Correctional Institution SCI.Camp Hill, and has not been treated
     for his illness for the past twenty four (24) months. Plaintiff
     states that he has complained to the defendants' on several occations,
     that he was experiencing sever pain in his chest; arms, legs, and
     head, and the defendants' just ignored the plaintiff's complains, and
     gave him nothing but pain killers to try and sooth the plaintiff's

8.

pains. Plaintiff further states that his conditions have become worse, and the pains have increased severly, and the doctor after (24) months have has prescribed a treatment for the plaintiff, that is making the plaintiff suffer even more pains, which are caused by some form of sideeffects. Plaintiff states that he has been given a number of different types of medications by the defendants', in which were also part of the sideeffects that the plaintiff is presently experiencing. Plaintiff states that the defendants' have been denying him the proper treatment for the past (24) months, and been supplimenting different types of medications for the plaintiff's illness, causing the plaintiff to become even more ill, and now the plaintiff is still suffering pains from the defendants' deliberate actions. Plaintiff states that the defendants' still have not performed any other tests to determine what it is that the plaintiff is suffering from, instead; the defendants' continue to prescribe different medications to the plaintiff, and denying him the proper treatments and tests.

### Count II
### Second Cause of Action

### (Inadequate Housing)

5. Plaintiffs' state that they are being housed at the State Correctional Institution which is designed to house a total of eleven hundred (1100) inmates, and is now housing about thirteen to fourteen hundred (1300 Or 1400) inmates. Plaintiffs' are being housed in areas that are not sufficient for each inmate. The plaintiffs' are housed in cubes that are designed to house no more than four or five inamtes at a time, but the plaintiffs' are presently being housed with at lease six to ten (6 to 10) other inmates, and are being placed in high risk areas with inmates who are ill, and who are infected with contagious dieases, and who do not shower, or maintain their hgiene, and who are constently causing trouble. Plaintiffs' state that they are being housed in a very tense environment, because the correctional officers are very disrespectful, and cause other inmates to act out against them, and other inmates' who are housed at the institution. Plaintiffs' also states that they are being placed in very stressful

situations, due to the constent threats and verble abuse that they receive
from the correctional officers at the institution. Plaintiff states that
they are sometimes ordered to do things that are not within the Department
of Corrections Policy. Correctional Officers are constently making up
new rules of their own, to target the plaintiffs'. Plaintiffs' states that
the have become seriously ill, due to the constent harassment that they
receive by the officers. Plaintiff Woods has become very delirious, and
has obtained ulcers in his stomach, and has since developed Gastroenteritis
Infection, which led to a Gallbladder Malfunctioning. Plaintiff states
that he has requested medical attention numerous times, and has been
denied. Plaintiff states that instead; defendants' treated him for a
number of different types of illnesses, which the plaintiff did not have,
plaintiff was just being diagnos  with different types of medications,
to see what exactly it was the plaintiff had, these medications just made
the plaintiff more ill, and left him suffering from the sideaffects, of
those different types of medications. Plaintiff states that all of these
illnesses where caused by the constent threats and harassment that he
received from the defendants.

Plaintiff Woods now states that since he started his complaints
against the defendants', he has been retaliated against in a number of
ways. Plaintiff states that he has since been unjustifiably transferred
to a worse institution than the last one, due his filing his complaints
with both the authorities, and the Courts. Plaintiff states that his
custody level was purposely raised to have him transferred to the present
institution, in which the plaintiff is now in serious fear for his safety,
because he is being housed with inmates who are doing life sentences, and
who have already put his life in imminent danger. Plantiff requests that
this Honorable Courts enter an immediate order on this case, to have
plaintiff Woods removed from the present institution, and placed in
another institution that is of a lower custody level, and that the
defendants' refrain from harassing him any further. Plaintiff makes this
request due to the present imminent danger that he is now in, and in the
interest of justice.

10.

Plaintiff Woods states that he is presently about to undergo an operation, to have his Gallbladder removed, because the doctors at the new institution believe that it is what is causing the plaintiff's present illnesses to occur. Plaintiff is afraid that his Gallbladder may not be the cause of his present illnesses, due to the numerous amounts of different decisions that he has had for the past two and a half ($2\frac{1}{2}$) years, and respectfully requests that this Honorable Court appoint counsel in this case immediately, to avoid the plaintiff from having the wrong **threatment** administured to him.

Finally; Plaintiffs' respectfully request that this Honorable Court's file an order in their behalf, allowing plaintiff Woods to become the **lone** signer of this complaint, due to the present separation, between him and plaintiff Denmark. And because plaintiff Denmark is below a third grade reading level, and is unable to represent himself in this matter. Plaintiffs' request that they be allowed to amend their complaint later in the proceedings, after counsel has been appointed.

<u>**RELIEF SOUGHT**</u>

**WHEREFORE,** Plaintiffs' Respectfully Request That The Court Grant The Following Relief:

A. **ISSUE A DECLARATORY JUDGMENT AGAINST THE DEFENDANTS THAT:**
1.   The actions and ommissions committed by the defendants, which violated the plaintiffs' clearly establihed rights.. Should be properly eveluated, and defendants' ordered to refrain from further committing such acts.
2.   The 'Defendants' in this action, all had the authority to act or intervene in the prevention of the claims stated in both counts # 1 and 2.

B. **ISSUE AN INJUNCTION ORDERING THE DEFENDANTS OR THEIR AGENTS TO:**
1.   To' immediately be enjoined from denying the plaintiffs', and other inmates the proper medical treatment. In which actions have led to the deaths of a number of inmates housed at their institution during the years of 1995 thru 2001.

2.    To immediately be enjoined from using the plaintiffs'
and other inmates, as medical expirements. In which the defendants'
administered a number of different types of medications to the
plaintiffs' and other inmates', to avoid examining them for the
correct illnesses that they may have had.

3.    To immediately be enjoined from housing the plaintiiffs' and
other inmates' in an area that is only designed to house at lease
three (3) to six (6) inmates at a time. Where the defendants'
are presently placing the plaintiffs' and other inmates lives
in danger, by housing fifteen (15) to eighth (8) inmates, in a
space only designed to house eighth (8) to four (4) inmates. And
where the plaintiffs' and other inmates, have become very tense,
due to the next inmate aside of him, either being infected with
a contagious diseases, not maintaining their hygienic necessities,
becoming very argumentive about each others space, waking up no
more than a foot or two from each other face, and because they
were constently being awaken by each others body foul body odors.
The defendants' are presently housing thirteen Hundred (1300) to
fourteen hundred (1400) inmates, in an facility only designed to
house from nine hundred (900) to one thousand fifty (1050) inmates.

4.    To immediately be enjoined from harassing the plaintiffs'
and other inmates, and retaliating against them for exercising
their constitutional rights to redress the courts. And for
further exercising their rights to grieve the system, by filing
grievances. Where the defendants' have on numerous occasitions
harassed the plaintiffs', and retaliated against them and other
inmates for filing grievances; complaints, and civil actions with
the courts'. And where the defendants' unjustifiably transferred
plaintiff Woods to another worse institution, as a means of
retaliation, by turning his promotional  transfer, to a demotional
transfer, for filing his complaints against them.

C.    OTHER RELIEF REQUESTED BY THE PLAINTIFFS":

1.    To Order the defendants' to immediately transfer plaintiff
Woods, to another institution out of the State of Pennsylvania,
to avoid any further retaliation against him from other staff
members in other institutions in Pennsylvania, due to his

institutional file being corrupted by the staff at SCI.Waymart. Plaintiff Woods further requests this relief, because the present institution where he is now confined in, does not have the proper medical facilities to treat his present conditions. Plaintiff Woods states that there is no prison hospital or infirmary, in which to treat inmates with the conditions that plaintiff Woods is in. Plaintiff Woods states that his life is being placed in imminent danger, due to the institution's lack of medical faicities, and because he has been placed in an institution with inmates' who's custody levels are well beyond his own, and because he is being forced to cell up with violent inmates' who's institutional file shows that they are menally diable, and not fit to be celled up with other inmates. Plaintiff Woods finally states that the medical department's staff, are aware of his present conditions, which pose a great danger to the plaintiff's health at this present time, and are delaying the required treatment, in which plaintiff Woods is in serious need of. Causing plaintiff Woods to suffer a great deal of pain and serious discomfort. Plaintiff Woods states that his immediate transfer is required in order for him to be immediately treated for his conditions, and to prevent him from being harm by other inmates' who pose a danger to his safety. Plaintiff Woods finally states that his health is being placed in imminent danger, because it is not for certain whether or not, it is his Gallbladder that is causing his present illness, because he was also told that he has an ulcer, which can also be the cause of his present illnesses, but he is being sent out any way by the institution, to have an operation done, to remove his Gallbladder, and he is afraid that his Gallbladder might be removed for no reason at all, and his condition may become much worse, due the ulcer, and cause him possible death.

## FURTHER RELIEF

**D.   AWARD OF PUNITIVE DAMAGES IN THE AMOUNT OF THE FOLLOWING:**

1.  $ 100,000--Each-----------------Jointly and separately against
Defendants: Raymond J. Colleran; Ronald Richards, Vito Casella,
Captain Griffns, Donald Fiske, Dr. Tamrat Bekele, MD, Jeannan Lumas
Neil Heffernan, Noel Booth, Elaine Martin, Milton Friedman, Robert
Long, Martin J. Walsh, Barbara Derrick, Patricia Colachino, Joseph
G. Sawchuk, John Doe aka (C/O Russian), John Doe aka (C/O Bebla),
John Doe (1), John Doe (2), John Doe (3), all Correctional Officers,
and finally John Doe ((4) Security Captain, for their wrong conduct
in causing plaintiff Woods to develope Emotional Distress, Ulcers
which led to the plaintiff's Gallbladder Disease, in which the
plaintiff now has to have his gallbladder removed. And for their
wrongs doings in unjustifiably transferring the plaintiff to a worse
institution, which was of a higher custody level, solely as a means
of retaliation against the plaintiff for filing his complaints
against them. Which all resulted in plaintiff's serious injuries
of Mental and Emotional Distress, and the plaintiff's physical
deterioration and hardship.

14.

## FURTHER RELIEF

**E.    AWARD OF COMPENSATORY DAMAGES IN THE AMOUNT OF THE FOLLOWING:**

1. $.250,000-jointly & 200,000 each. jointly and separately against defendants': Donald Fiske, Dr. Tamrat Bekele, MD., Jeannan Lumas, Neil Heffernan, Raymond J. Colleran, Milton Friedman, and Robert Long, for their wrong doings in causing the plaintiffs' to become seriously ill, due to their using the palintiffs' and other inmates', as medical experiments, by testing a number of different types of medications on the plaintiffs', and other inmates', to find cures for illnesses in which they were not able to detect, due to their lack of skills, lack of medical assistance, and the failure to properly order tests; examinations, and treatments.

2. $.300,000----------- Jointly against defendants' Raymond J. Colleran; Milton Friedman, and Robert Long, for causing plaintiff Woods to be placed in the present dangerous conditions, and for submitting false reports in plaintiff Woods institutional files, in order to have plaintiff Woods denied parole by the Pennsylvania Board of Probation and Parole, by slandering plaintiff Woods character, and by placing misconducts which were informally resolved before action could be taken in plaintiff Woods institutional file, which was also solely done to slander plaintiff Woods character........

## CONCLUSION

**WHEREFORE,** The plaintiffs' respectfully request that this Honorable Court in its' jurisdiction, Grant their Reliefs, and order the defendants' to pay the amounts requested by the plaintiffs'. It is also requested that this Court enter an order of Injunctive Relief against the defendants', and order them to enjoin from committing the acts and ommissions against the plaintiffs' and other inmates who are housed at the institution. The plaintiffs' would also request that this Honorable Court Appoint Counsel in this case, to represent them, due to the extent of violations, and imminent danger that this case poses to the plaintiffs' and to other inmates within the custody of the defendants'. Plaintiff Woods would further like to reserve his rights to amend this complaint, with parties of the present institution where he is presently being housed. Plaintiff Woods makes this request, due to the inadeqate housing, and sever over-crowding in which he is being housed in, which are very poor, and in violation of the statutes and codes of the state of Pennsylvania, and those of the Pennsylvania Department of Corrections. Plaintiffs' thanks this Honorable Court's for its' time and consideration in this matter, and requests that immediate action be taken on plaintiff Woods's present medical conditions, which pose a great imminent danger to his well being. Plaintiff Woods would also like to reserve his rights to amend the complaints and reliefs requested, as to the defendant William F. Ward, of the Pennsylvania Board of Probation and Parole, which have violated his constitutional rights to be treated equally on parole....

Dated: April 24, 2001 . . . . . . . . . . . . . .

Respectfully Submitted

X. _Carlos c. Woods_ . . . . . . . . . . . . . .

X. . . . . . . . . . . . . . . . . . . . . . .

**Mr. Carlos Chico Woods, Pro-se**
BY-9729 SCI.Frackville
1111 Altamont Blvd.
Frackville, Pa 17931-2699

16.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Carlos Chico Woods, and

Dwight Denmark, et al.

_____

_____

**Name of Plaintiff(s)**

**v.**

Martin F. Horn, State Attorney General,

Raymond J. Colleran, Supt/Warden, and

William F. Ward, Chair, Pennsylvania

Board of Probation and Parole, et al.
          **Name of Defendant(s)**

Civil Case No.

_____

Judge

(Number and Judge to be
assigned by court)

## APPLICATION TO PROCEED IN FORMA PAUPERIS

**PLEASE READ CAREFULLY AND FULLY COMPLETE EACH SECTION.**

1. <u>XXX</u>    I am willing to pursue my claims in this action under the n
provisions of The Prison Litigation Reform Act, understandi
that pursuing my claim requires payment of a partial filing
and deduction of sums from my prison account when funds exi
until the filing fee of $150.00 has been paid in full.

2. <u>XXX</u>    I have enclosed an executed Authorization form which author
the Institution holding me in custody to transmit to the Cle
a certified copy of my trust account for the past six (6)
months as well as payments from the account in the amounts
specified by 28 U.S.C. §1915(b).

3. Have you, prior to the filing of the complaint in this action and w
a prisoner as that term is defined in 28 U.S.C. § 1915(h), brought
more actions or appeals in a court of the United States that were
dismissed as frivolous, malicious, or for failure to state a claim
which relief may be granted?  Yes _____  No <u>XXX</u>

   (a)  If the answer is "yes," are you now seeking relief because you
        are under imminent danger of serious physical injury?
        Yes <u>XXX</u>   No _____

(b)    Please explain in detail why you are under imminent danger of serious physical injury:

Plaintiffs' both are ill, and effected with infectiousness

Diseases, and are presently living under conditions in which

they are being exposed to other kinds of diseases, and are
being denied the proper medical treatment by the defendants'.

4.    (a)    Are you presently employed at the Institution?  Yes XXX  No

(b)    If yes, what is your monthly compensation?  $ 20.00 sum dolla

5.    Do you own any cash or other property; have a bank account; or rec
money from any source?  Yes xxx  No _____

If the answer is "yes" to any of the above, describe each source a
the amount involved.

I own no property or bank accounts, but I receive some funds at time

from my grandfather who is very poor and struggling, that amount is

$20.00 dollars every other month...............

I certify under penalty of perjury that the foregoing is true and correc

Executed on _April 24, 2001_
              (Date)

_Carloz elwood_
            (Signature of Plaintiff)

This certification is executed pursuant to Title 28, United States Code,
Section 1746.

# AUTHORIZATION
### (Prisoner's Account Only)

Case No. _____

> NOTE: Completing this authorization form satisfies your obligation under 28 U.S.C.
> § 1915(a)(2) to submit a certified copy of your trust fund account.

I, ---Carlos Chico Woods----------------, request and authorize the agency hold

custody to send to the Clerk of Court, United States District Court for the Middle District of Penn

a certified copy of the statement for the past six months of my trust fund account (or ins

equivalent) at the institution where I am incarcerated.   I further request and authorize the agency

me in custody to calculate and disburse funds from my trust account (or institutional equivale

amounts specified by 28 U.S.C § 1915(b).

This authorization is furnished in connection with the filing of a civil action, and I unders

the filing fee for the complaint is $150.00.  I also understand that the entire filing fee will be deduc

my account regardless of the outcome of my civil action.   This authorization shall apply to a

agency into whose custody I may be transferred.

Date: _____ April 24, _____ 2001

Carlos C. Woods
Signature of Prisoner

# Diseases Related to *H. Pylori*

## Duodenal Ulcer Disease

Duodenal peptic ulcers occur in the first part of the intestine, one of two inches past the end of the stomach. Most duodenal ulcers occur in patients with H. pylori infection. If duodenal ulcers are treated with antacids or drugs such as Tagamet, Zantac, or Pepcid, they usually come back when the drugs are stopped. Acid reducing drugs are expensive and do not cure the duodenal ulcer problem.

It has now been proven that by killing Helicobacter pylori, many patients with duodenal ulcer can be cured. The treatment is most successful in patients under the age of 50, but older persons also benefit. After killing the H. pylori germ, most patients (80%) will be able to stop taking acid reducing drugs (i.e. Tagamet, Zantac, Pepcid).

## Gastric (Stomach) Ulcers

These peptic ulcers have two causes. The most common cause is also H. pylori infection of the stomach. We expect stomach ulcers to behave similar to duodenal ulcers so that after killing the H. pylori, they should not recur. Stomach ulcers are more complicated than duodenal ulcers, however, but the effectiveness of antibiotic treatment for stomach ulcers appears to be similar to that seen in duodenal ulcers (cure rate 70-90% if H.pylori is eradicated). It is worth noting that antibiotics effective against H. pylori have been used as stomach ulcer treatment in China for several years with very good results.

About 30% of stomach ulcers are not caused by H. pylori but are due to the corrosive effect of aspirin type medications, such as are taken for arthritis. These stomach ulcers may benefit from antibiotic treatment if Helicobacter pylori is also present. If H. pylori is not present, then treatment with acid-reducing drugs or prostaglandins may be successful.

## Cancer in the stomach

Stomach cancers (gastric adenocarcinomas) are often associated with H.pylori (70-90%). In an extensive review of gastric cancer and H.pylori the Eurogast Study Group determined that presence of H.pylori confers an approxi-mately six fold risk of gastric cancer, accounting for about half of all gastric cancers. Supposedly, chronic gastritis leads to intestinal metaplasia (atrophic gastritis) which then undergoes malignant change. In the final stage H.pylori may no longer be detected on biopsy but immunologic studies may show evidence of past infection.

Mucosa associated lymphoid tissue (MALT) may undergo malignant change causing a low-grade lymphoma of the stomach. Retrospective biopsy studies show that 90% of such MALT lymphomas are asso-ciated with H.pylori. Early reports indicate about a 50% cure for localized MALT after cure of H.pylori.

## Non-ulcer dyspepsia, (and some cases of nausea and vomiting)

In patients with chronic dyspepsia who do not have ulcer disease, the role of H.pylori therapy has not been proven. Therefore, consider other diagnoses before assuming that H.pylori is the cause. If other

EXHIBIT (B)
"Information on Diseases..."    6/15/01 11:14 AM

Case 1:01-cv-01070-WWC-PT    Document 13    Filed 06/15/2001    Page 29 of 31

diabetes and *H. pylori.*

Go back to the list of questions

**Question**

What are the symptoms of an *H. pylori* infection? Can it cause extreme swelling in the stomach and might it increase as the day goes on?

**Answer**

The symptoms of *H. pylori* infection are difficult to define. Practically any type of symptom between the nipples and the bellybutton could be coming from the stomach and could be caused by *H. pylori.* For many years doctors recognised that it was not possible to detect which patients had ulcers, that is why diagnosis always requires an endoscopy.

H. pylori is always associated with gastritis, an inflammation of the stomach in which white cells infiltrate into the stomach lining. It is believed that these white cells can in themselves cause damage and ultimately lead to weakness in the stomach lining, which is the cause of the ulcer. This process is explained elsewhere on the Helicobacter Foundation web pages.

Because of the above, any stomach symptom could possibly be caused by *H. pylori.* Heartburn is related to a leaky valve at the lower oesophagus and the arrival of acid from the stomach into the oesophagus. Thus, heartburn could be related to *H. pylori* if some *H. pylori* patients produce excessive acid (this is known to occur) or if *H. pylori* leads to some slowing of emptying of the stomach acid (this sometimes occurs when the pylorus valve at the bottom of the stomach is narrowed). Burping symptoms are usually related to some problem at the lower oesophageal sphincter, allied to heartburn, reflux and hiatus hernia. Since I believe patients with *H. pylori* are more likely to vomit, I also think they are more likely to damage their lower oesophageal sphincter over the years and be more susceptible to symptoms such as burping. The production of gas in the stomach comes from carbon dioxide seeping through the stomach wall, and it is possible that *H. pylori* can increase the amount of carbon dioxide present in the stomach ie. causing burping. Patients who burp excessively however, are often actually swallowing small amounts of air and burping it back up to relieve a discomfort they have related to an oesophageal sphincter problem, as discussed above. Burping can sometimes also occur when the stomach is slow to empty and food in the stomach ferments, releasing gas.

Symptoms of nausea associated with vomiting are quite likely to be caused directly by a stomach condition and can be symptoms of *H. pylori* infection. If the vomit is initially clear and subsequently contains blood, it is likely to be caused by a tear in the lower part of the oesophagus caused by the initial vomiting. If blood is present in the vomiting, it can also be caused by a bleeding ulcer in the stomach. The appearance of blood in vomit is either red (a recent or large bleed) or dark brown (bleeding in the last hour or so with changed blood affected by stomach acid). Blood in the stomach can also appear black if it has been resting in the stomach for a few hours. When bleeding occurs in the stomach and blood comes in contact with stomach acid it is then changed to a black colour, so that the patient with significant stomach bleeding (more than 200 mls) is likely to have

black stools, which is called melena.

When *H. pylori* and gastritis cause delay in gastric emptying patients may feel bloated or full after a normal sized meal ("early satiety").

The opposite can also occur in a few patients. For example, a patient may state that after eating nutritious and tasty food they still feel hungry ("as if the food has not done me any good"). I believe this symptom is associated with low acid secretion and is also sometimes described by patients on acid lowering drugs.

Early satiety (fullness) can possibly also be caused just by the inflammation of the lining of the stomach, since the stomach does not easily expand as well as a healthy stomach, and the stomach lining is rather sensitive to stretching.

Pain in the stomach and duodenum is often described as "gnawing", which is somewhat hard to describe, but typically is a symptom of severe hunger and nausea combined so that the patient with gnawing is not sure whether he should vomit or eat! This symptom is typical of duodenal ulcer patients who have gnawing when the stomach is empty. The best cure is a very small, light snack or taking acid lowering drugs.

Symptoms of gas and flatulence below the stomach are often hard to cure. The causes of gas in the intestine are fermenting sugars, and this can result from any kind of maldigestion of sugar, including maldigestion of sugars that are not digestible ie. beans! Maldigestion of milk sugar is called lactose intolerance. In patients with lactose intolerance colicky pain, gassy symptoms and diarrhoea can sometimes result after drinking milk. Patients who have a high fibre diet may not tolerate it particularly well and sometimes complain of distension and gas. In rare cases, bacterial colonisation of the intestine can result in fermenting of sugars in food before the food is absorbed. This also leads to gas symptoms.

Go back to the list of questions

**Question**

Is there any association between *H. pylori* and Crohn's Disease?

**Answer**

No. However, many doctors believe that Crohn's Disease is caused by an infection. This is very controversial at present and clinical trials are being undertaken around the world to see if antibiotic treatment affects Crohn's disease.

Go back to the list of questions

**Question**

I took Biaxin, Flagyl and Prilosec for 21 days and felt significantly better for a while. However, the pain is back. Is it possible that the bacteria are drug resistant?

**Answer**

Yes, it is possible that the bacteria are drug resistant. You should have a breath test four weeks after treatment to see if it has been

eradicated. You should read the treatment article to work out what the next treatment option is.

Go back to the list of questions

**Question**

Has anyone been using the CLOtest on dogs, particularly re-acquired hypertrophic pylori stenosis?

**Answer**

Not that we know of, except that we do know that the CLOtest does detect urease in the stomach of dogs, and dogs do sometimes develop gastric ulcers similar to humans.

Go back to the list of questions

**Question**

Is it possible to transmit the bacteria from one spouse to another through sharing the same food? If my H. pylori infection is successfully eradicated, but my spouse's isn't, will I be likely to get it back again?

**Answer**

Investigators in Australia have shown that Chinese families have increased levels of H. pylori when they share a common bowl for a traditional Chinese meal. This does not prove it, but does suggest that H. pylori can be transmitted from the mouth of one person to the mouth of another through chopsticks. I am sceptical however, and think that it is probably just socioeconomic or ethnic association with H. pylori infection that causes this observation. Some doctors have seen H. pylori in the mouth in dental plaque, but his has not been universally described. Spouses probably do transmit H. pylori from one to the other, but this is not usually important in our patients. After being married for several years, spouses are either immune to the H. pylori or already infected. In the United States about 50% of our H. pylori patients have an infected spouse. After one spouse is treated, another spouse with no symptoms need not be treated unless obvious re-infection of the treated patient occurs (re-infection is rare).

Go back to the list of questions

**Question**

Has a sudden exposure to high country altitudes (difference in air pressure) been known to trigger H. pylori infection?

**Answer**

No.

Go back to the list of questions

**Question**

Can taking Biaxin for a sinus infection make me more tolerant towards antibiotics taken to treat H. pylori?