IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARLOS CHICO WOODS,
        Petitioner

     v.

CHESNEY, et al.
        Respondents

\*
\*
\*   CIVIL NO. 1: CV-01-1078
\*
\*   (Judge Caldwell)
\*
\*

ORIGINAL

FILED
HARRISBURG, PA

NOV 06 2001

PETITIONER'S REPLY TO THE RESPONDENTS ANSWER TO THE
PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

    Petitioner, Carlos Chico Woods, by way of pro-se petition, hereby files a reply to the Respondent's Answer to his Petition for a Writ of Habeas Corpus filed on September 12, 2001, and states the following in support of his reply.

    1. Respondent's first claim that the petitioner's claims do not state a basis for Habeas Relief.  Petitioner states that this is not correct because it has been clearly stated in Georgevich v. Strauss, 772 F.2d 1078 (3rd. Cir. 1985), that the Third Circuit Court of Appeals has held that an offender who was challenging the constitutionality of the denial of parole on the basis that he was denied procedures required by statue stated a cognizable claim in habeas corpus.  And in this instant case before this Honorable Court.  The petitioner has stated a number of constitutional violations which the respondent's have denied the petitioner, including the respondent's discrimination against the petitioner because of his race, and religious beliefs, which in itself is a constitutional violation entitling the petitioner to a Federal review under the habeas corpus relief act. See Candelaria v. Griffin, 641 F.2d 868, 870, (10th Cir. 1981); and Osborne v. Folmar, 735 F.2d 1316, 1317, (11th Cir. 1984).

    2. Petitioner also states that he is entitled to habeas corpus relief in this case because he has more than met the requirements which a petitioner is required to meet before seeking habeas corpus review in the Federal Court's, which is to satisfy the exhaustion requirements.  In this case before this Honorable Court, the petitioner has well satisfied the exhaustion requirement by following the proper claim of procedures.  In which the petitioner filed an Administrative Appeal with the Board of Probation & Parole on May 10, 1999. See Respondents attachment's to their answer marked as Attachment (Q-72-75).  And also by filing a Petition For Review with the Commonwealth Court of Pennsylvania on August 31, 1999.  See Respondent's attachment's to their answer marked as Attachment (s).  Also see the Petitioner's Second request for administrative relief concerning the Board's new actions filed on August 30, 1999, filed by the petitioner on September 15, 1999.  Also attached to the respondent's answer as attachment(s).  And finally see a copy of the petitioner's Petition For Leave to file an Allowance of Appeal Nunc Pro Tunc to the Supreme Court of Pennsylvania filed on 10/19/2000, as Exhibit (A) attached, and a copy of the order filed on January 11, 2001 by the Supreme Court of Pennsylvania denying the petitioner's petition for leave to file a Petition For Allowance of Appeal

1.

Nunc Pro Tunc due to the Commonwealth Court's failure to forward a copy of their July 21, 2000 Order Affirming the Board's order filed on September 16, 1999, granting in part, and denying in part petitioner's request for Administrative Relief, and of the Board's Motion To Limit The Petitioner's issues to his second request for Administrative Relief, and granting Court Appointed Counsel's petition to withdraw.  See the Commonwealth Court's opinion attached to the respondent's answer to the petitioner's petition marked as Attachment (A).  Petitioner states that because he was not sent a copy of the respondent's Motion To Limit his issues on his second Request For Administrative Relief, he was clearly denied his constitutional rights to challenge that motion which lead to the Court's denying the petitioner's second request for Review.  Petitioner states that this should more than satisfy the exhaustion as well as entitle the petitioner to a Habeas Corpus Relief.  See <u>Rose v. Lundy</u>, 455 U.S. 509, 515, 102 S. Ct. 1198, 1201-02, 711 Ed.2d 379 (1982).  Petitioner further states that the mere exhaustion requirement does not in any way foreclose federal relief; especially when the petitioner's due process rights were hendered by the respondent's by not forwarding a copy of their Motion To Limit the petitioner's second request for Administrative Relief, but only postpones Federal Relief.  See <u>Toulson v. Beyer</u>, 987 F.2d 984, 986 (3rd Cir. 1993).  Petitioner Therefore; states that the respondent's assumption that the petitioner's claims are without merit, or that they do not entitle him to Habeas Review, and that the petitioner is required to meet the exhaustion requirements before filing his habeas corpus petition, is clearly incorrectly stated, and wholly without merit for this Honorable Court's to deny petitioner's petition on its face without first holding an evidentiary hearing to determine whether or not the petitioner's claims are of meritorious. Petitioner also states that the respondent's claims that the petitioner is not entitled to Habeas Corpus Review because a Habeas Corpus Review is only applied to Prisoner's who are challenging their convictions, and not one who is challenging a Parole Revocation, is also incorrectly stated, because it has clearly been stated in <u>Burkett v. Love</u>, that a parolee who is challenging his revocation which violated his constitutional rights is entitled to Federal Review, because of the violations which were committed against him by the respondent's.  In the <u>Burkett</u> case, the Court's stated that the Supreme Court held in <u>Perry v. Sindermann</u>, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972), that although a person may have no "right" to a valuable government benefit, and may be denied it for any number of reasons, "there are some reasons upon which the government may not rely."  We applied that principle in <u>Block v. Potter</u>, 631 F.2d 233, 236 (3rd Cir. 1980), where we explained "[a]lthough <u>Greenholtz</u>, indicates that a state may...deny it completely, a state statue may not sanction totally arbitrary parole decisions founded on impermissible criteria."  Moreover, "[a] legislative grant of discretion does not amount to a license for arbitrary behavior."  The Court's also stated that <u>Reider</u>, was correct in its conclusion that no liberty interest is created by the expectation of parole.  But <u>Reider</u>, is seriously flawed because it fails to recognize that the curtailment of a liberty interest is not the only way that the Constitution may be violated.  In this case before the Court's the petitioner states that the respondent's incorrectly applied the law as to a parolee who is at actual liberty.  The petitioner in this case before the Court's was not at liberty during the times that he had requested that the Pennsylvania Board of Probation Parole came get him so that he could answer to their charges and violations, therefore, the time in which the

2.

respondent's used to extend the petitioner's original trial court sentence
was a clear violation of the Constitution, because the Laws are clear, that
a parolee who has been recommitted as a technical parole violator and a
convicted parole violator cannot be recommitted to serve more than the
original sentence that was originally imposed by the trial courts.  The
only time that may be added to that sentence is the time that the
petitioner was actually at liberty on parole which was only ten and a half
(10½) months.  This would of only extended the petitioner's max date from
02/22/2003 to 12/22/2003, here the respondent's exceeded that sentence and
disturbed the trial courts sentence by extending that sentence from
02/22/2003 to 10/15/2005.  See <u>Greenholtz v. Inmates of Nebraska Penal &
Correctional Complex</u>, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979);
<u>Reider v. Pennsylvania Board of Probation & Parole</u>, 671 A.2d 290, 292
(1996), and <u>Burkett v. Love</u>, 89 F.3d 135, 138-39 (3rd Cir. 1996).  Also see
<u>Davenport v. Pennsylvania Bd. of Prob.</u>, 656 A.2d 581, 583-84 (Pa. Cmwlth.
1995);  Also see pages (1) and (4) of the respondent's answer to
petitioner's Writ of Habeas Corpus, at paragraph's 1 and 7 and attachment
(A) page (1).
    3. Petitioner further states that the Respondent's claim that he has
no constitutionality-based right to parole under the United States
Constitution, and that the State of Pennsylvania has not created a liberty
interest in the possibility of parole, but what respondent's fail to
realize here, is that the petitioner has already once been paroled and now
has a liberty interest right under the Pennsylvania Constitution as well as
the United States Constitution because it has been clearly stated in prior
Court rulings by both the Commonwealth Court of Pennsylvania and by the
United States Supreme Court's that once an inmate has been paroled, any
order recommitting that parolee can be challenged by the parolee because he
is now challenging his recommitment from liberty.  See <u>DeWitt v.
Ventetoulo</u>, at 6 F.3d 32 (1st Cir. 1993); and <u>Bennett v. Bogan</u>, at 66 F.3d
812 (2nd Cir. 1995).  In <u>DeWitt</u>, the Circuit Court's stated that the State
is not obliged by the Constitution to parole it's prisoner's, but having
done so it is obliged to afford them due process. See i.e. at 6 F.3d 36.
And in <u>Bennett</u>, The Circuit Court' stated that Whether Parole Commission
violated Petitioner's right to due process by its delay is a far thornier
issue.  Due Process protections apply to parole revocation proceedings
because one has a liberty interest on Parole.  It went further to say that
the Supreme Court has held, however, that "due process is flexible and
calls for such procedural protections as the particular situation demands."
Id. at 481, 92 S.Ct. at 2600. <u>Bennett</u>, went on to cite <u>Moody v. Daggett</u>,
stating that the Court's in Moody held that a Parole Commission did not
deprive a petitioner of due process when it waited until the end of the
petitioner's state sentence on underlying convictions to execute a parole
violator warrant and hold a hearing.  In this case at hand, the petitioner
states that the Pennsylvania Board of Probation & Parole prohibits a
parolee from serving a new sentence for a new conviction before the parolee
completes the unexpired time on their original sentence.  Therefore, for
the respondent's to even try and use the Moody case argument above would
only cause the Pennsylvania Constitution to be in direct conflict with it's
own Constitutional laws and very contradicting to it's language.  See **Title
61 Pa. C.S.A. § 331.21.**  Petitioner states that the long standing law is
clear as to a parolee having a due process right after being paroled by the
Parole Board once. See <u>Morrissey v. Brewer</u>, at 408 U.S. 471, 489, 33 L.Ed
2d 484, 499 (1972); and <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 36 L.Ed. 2d 656
(1973).

3.

Therefore, the petitioner here is entitled to due process rights.
    Petitioner further states that while states may create liberty
interests protected by the Fourteenth Amendment's due process clause, those
interests are generally "limited to freedom from restraint which, while not
exceeding the sentence in such an unexpected manner as to give rise to
protection of the Due Process Clause of it's own force....nonetheless
imposes atypical and significant hardship on the inmate in relation of the
ordinary incidents of prison life." They go on to further state that a
decision not to release an imprisoned convict before reaching his maximum
sentence does not impose an atypical and significant hardship on the
prisoner in relation to the ordinary incidents of prison sentence. The
respondent's continue to state that Pursuant to 61 P.S. § 331.21a(b), a
technical parole violator must be given credit for street time served in
good standing and **"may not be recommitted beyond the expiration date of
the original sentence"**. The time spent in good standing prior to
recommitment for technical violations is not shielded from forfeiture where
the parolee subsequently commits a new crime and is recommitted as a
convicted parole violator.
    Petitioner states that all this is clear to the respondent's, but what
the respondent's have failed to recognize here is the language that has
been printed under their own constitution. It is also clear to the
respondent's that the petitioner's original sentence expires on **February
22, 2003**, as stated by the Court of Common Pleas of Allegheny County, by
the Hon. Judge Jeffrey A Manning. See Respondent's Attachment (B) and page
(77) of the Respondent's Answer.
    Petitioner further states that the respondent's extended that sentence
to **October 15, 2005**. See paragraph (1) page (1) and paragraph (7) page (4)
of the respondent's Answer To Petitioner's Habeas Corpus Petition, clearly
violating the Court's sentence well as the petitioner's rights. See
Davenport v. Penn. Bd. of Prob. & Parole, at 66 A.2d 581, 583-84
(Pa. Cmwlth. 1995); and Hawkins v. Freeman, at 195 F.3d 732, 756-58 (4th
Cir. 1999). In Davenport, The Pennsylvania Commonwealth Court's stated
that; The regulation relied on provides, in pertinent part: If the Board
orders the recommitment of a parolee as a convicted parole violator, the
parolee shall be recommitted to serve an additional part of the term which
the parolee would have been compelled to serve had he not been paroled,
accordance with the [presumptive ranges listed in the regulation]. The
court went further to clarify that statement by stating that under 37
Pa. Code § 775.2. This section clearly indicates that the Board may
recommit a convicted parole violator **"to serve an additional part of the
term which the parolee would have been compelled to serve had he not been
paroled..."** **"However, the Board "[cannot recommit a convicted parole
violator to serve more than the balance of his unexpired term]".  This
point has been made recently by our Supreme Court which in 1990, wrote
specifically to emphasize the axiomatic principle that: [The sum total of
aggregated backtime imposed by the Board plus the time served prior to
parole [c]annot exceed the total aggregated maximum sentence first imposed
by the trial court]."** Therefore, it is clear that the Parole Board errored
by imposing a sentence of two and a half (2½) to three (3) years more to
the petitioner's original sentence which was imposed by the trial court's.
The petitioner's sentence could not be extended no more than the ten and a
half (10½) months that he was at liberty on parole. Making the
petitioner's new maximum date 12/22/2003. The court's in Hawkins, stated
that; A number of other court's, both at the Federal and State level have

4.

recognized the due process right set out in <u>Lundien</u>, <u>Cook</u>, and <u>DeWitt</u>, See e.g., <u>United States v. Watkins</u>, at 147 F.3d 1294, 1298 n. 5 (11th Cir. 1998), Where the Circuit Court's concluded with; "We are mindful that a defendant's due process rights may be violated when a sentence is enhanced after the defendant has served so much of his sentence that his expectations as to its finality have crystallized and it would be fundamentally unfair to defeat them." (quoting Lundien, 769 F.2d at 987: and <u>United States v. Tolson</u>, 935 F. Supp. 17, 21 (D.D.C. 1996). Where the Circuit Court stated, "[T]he Due Process Clause prohibits enhancing a defendant's sentence after he has served so much of it that his expectations have crystallized." Again, it is clear here that the respondent's have extended the petitioner's sentence.

Petitioner now states that the respondent's are fully aware that the petitioner was not at liberty for more than (10½) on parole. The petitioner was paroled on February 22, 1996 to the State of New York, in which he remained on parole at liberty until December 29, 1996 when he was arrested in the State of Delaware for Robbery; Criminal Conspiracy, and Possession of a Firearm. The petitioner on a number of occasions tried to contact his parole agent in New York to inform her of his arrest in Delaware, but was unable to because of the prison's phone system. The petitioner then was released on time served and ordered to do one (1) year probation in the State of Delaware before he could leave the State. Petitioner made two attempts to contact his New York Parole Agent while he was doing his probation in Delaware to inform her that he had been arrested in Delaware and that he was sentenced to some probation time, but when he made his second attempt, someone other than his parole agent had answered the phone and had informed the petitioner that he should not worry about it because they had already known where he was and that they were sending somebody to get him and then the person hung the phone up. The petitioner remained in Delaware on probation working and taking care of his family until September 1997 when the petitioner was re-arrested for a Possession within a 1000" feet of a school. The petitioner upon contracting the institution's records office in the Delaware State Correctional Institution, requested that the staff contacts the State of New York and inform them that he was in custody on a new charge and that he wanted to appear to answer to his violation of parole. Petitioner states that New York was contacted and they inturn told the Delaware officials to contact the Pennsylvania Board of Probation & Parole. They did as they were told and the respondent's were aware that the petitioner was in custody and available to be picked up to have his revocation hearing on his violation. The petitioner wrote a number of letter's; motions and petitions and forwarded them to the respondent's requesting a revocation hearing on his parole violations. The respondent's denied every letter; motion and petition that the petitioner sent them. See Exhibit (**B**). The petitioner was then convicted in Delaware on the charges of Possession within 1000" feet of a school zone and Resisting Arrest and the Court requested that the petitioner be released to a out patient drug treatment program, but took that sentence back because of the respondent's board warrant which was holding the petitioner for a revocation hearing. Petitioner states that he did a total of twenty one months in Delaware State Correctional Facility and the respondent's continued to refuse to come and get him, thereby waving their right to deny the petitioner of any time in which he was not at liberty on parole. It is clearly clarified by the respondent's and by the Pennsylvania Constitution as well as the United States Constitution

5.

that the Pennsylvania Board of Probation & Parole's rules and regulations have clearly stated that a parolee is not entitled to time credit for time spent ["at liberty"].  Now to define the meaning of the word liberty which clearly means: [Freedom from arbitrary or undo external restraint, esp. by a government, (give me liberty or give me death).  A right, privilege, or immunity enjoyed by prescription or by grant; the absence of a legal duty imposed on a person (the "liberties Protected" by the Constitution).  See Meyer v. Nebraska, at 262 U.S. 390, 399, 43 S.Ct. 625, 626 (1923).]  Which clearly states that; "[Liberty] denotes not merely freedom from bodily restraint, but also the right of the individual to contact, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the ditates of his own conscience and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."  Here; it is not clear that the petitioner was entitled to do any of the above, but that he was restraint from doing so because he was not at liberty, but he was incarcerated in a State Correctional Facility, equivalent to the one that he is now being confined in.  Therefore, because it is clearly shown, that the petitioner was not at liberty, this Honorable Court should enforce the respondent's to comply with its language as it applies to this case, and not to use other terms when deciding whether or not they want to parcle an individual whom they may not like, or because of an individual's race or religion, or because that person has taken several civil actions against the State for violating his constitutional rights.  The respondent's should not be allowed to use their discretionary powers to deny individual parolees re-parole, by selecting whom they are going to parole and whom they are not going to parole, solely on the parolees past records which have already been adjudicated, and because the parolees are of a certain race or religion, or as a means of retaliation against the parolees for exercising their constitutional rights to redress the courts by via civil actions.  See Burkett v. Love, 89 F.3d 135 (3rd Cir. 1996), Also see Gomilliom v. Lightfoot, 364 U.S. 339. 347, 81 S.Ct. 125, 130. 5 L.Ed.2d 110 (1960); Lee v. Washington, 390 U.S. 333, 88 S.Ct. 994, 19 L,Ed.2d 1212 (1968), Carter v. Jury Commission, 396 U.S. 320, 90 S.Ct. 528, 24 L.Ed.2d 549 (1970), and Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  In Wolff, The Supreme Court's made it clear that, a State, having granted rights and privileges to inmates, may not deny those rights and privileges to inmates because of their race.  It is clear that the Court will not tolerate racial discrimination in prisons, or by government officials.  In Gomilliom, the Honorable Justice Frankfuter stated: "When a state exercises power wholly within the domain of state interests, it is insulated from Federal judicial review.  But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right."  Here it is clear that the respondent's have applied a language as to their reasons for extending the petitioner's original sentence, which is clearly flawed and without merit.  It is also clear that the respondent's have misapplied their language solely for the purpose of clarifying their abuse of discretion, and their continuous abuse of power.  The respondent's here have clearly misapplied the law in this matter.  Therefore, violating both the Laws of the Land, and the Laws of the United States Constitution, as well as the Pennsylvania Statues.  See **Title 61 P.S. § 331.19; and 331.21.**  Petitioner states that the respondent's have also violated the Double Jeopardy Clause, by extending

**6.**

his original sentence because it has been clearly established that, a defendant's maximum sentence cannot be disturbed by anyone but the trial court in which sentenced the defendant.  See **Title 3 Pa. Code § 75.2** and Krantz v. Board of Probation & Parole, at 86 Pa. Commonwealth Ct. 38, 483 A.2d 1044 (1984); and Merritt v. Pa. Board of Probation & Parole, at 524 Pa. 577. 574 A.2d 597, 597-98 (1990).  Which states that: Section 21.1 of the Parole Act gives the Board the power to return parole violators to prison to serve the entire remaining balance of their unexpired terms.  But **Id. at 43, 483 A.2d at 1047-48** (emphasis in original).  Calculation of the amount of back time is within the Board's discretion, but that discretion is limited by the remaining balance of the unexpired term.  Now once again we turn to the language used in this Statue.  Both the words Remaining and Unexpired are being used to define the Statues meaning.  Here we first address define the word Remaining, which means: ("That which remains or is left".)  Now we define the word Unexpired: although in Statue it is used as Unexpired Term, it means: ("Remainder of a period prescribed by law or provided for in lease after a portion of such time has passed, and phrase is not synonymous with "vacancy.").  Now it is clear that the petitioner's maximum sentence is February 22, 2003, and not October 15, 2005.  So for the respondent's to extend that sentence from 02/22/2003 to 10/15/200, is clearly a violation of the petitioner's constitutional rights under the Fourteenth Amendment.  Because it exceeded the trial court's sentence first imposed.  See McCaskill v. Bd. of Probation && Parole, at 631 A.2d 1092 (Pa. Cmwlth. 1993), and Davenport v. Pennsylvania Bd. of Prob., at 656 A.2d 581, 583-84 (Pa. Cmwlth. 1995).  Also see Watkins v. Bd. of Probation & Parole, 685 A.2d 226 (Pa. Cmwlth. 1996).  Therefore, because it is clear that a parole denial can infact constitute a due process deprivation, as interpreted by the Third Circuit Court's in Block v. Potter, which states that some years ago, our Court of Appeals decided that denial of parole may give rise to a due process deprivation once a state "decides to provide that which is not constitutionally required to offer."  Under Block, a parole denial can constitute a due process deprivation based on factors such as "religion, political beliefs, or frivolous criteria with no rational relationship to the purpose of parole such as the color of one's eyes, the school one attended, or the style of one's clothing."  Here, the petitioner contends that the respondent's used him as an example, so that they could gain recognition from the society, from their prior errors, in which the respondent's had purposely ignored the violent back ground of a convicted murder, who's prison files were not produced at the time of his release on parole, this case caused the respondent's to lose the trust of the society, and of government officials who supported them financially. The case was the infamous **(Robert "Mudman" Simon in 1995)**, the petitioner was targeted by the Mudman case, as well as many other parolee's, but the petitioner was also paroled to the State of New York where he is originally from, and violated his parole, which was granted to him in February of 1996, by the respondent's, this was another reason, why the respondent's gave the petitioner such a hit on parole, making the petitioner max out his entire sentence, plus more time which was illegally attached.  The petitioner was clearly a first time parole violator, who had never been convicted before of any crimes whatsoever, prior to the conviction which he had received for the original sentence prior to him being paroled, this proved that the respondent's denied the petitioner's due process rights, as well as his Equal Protection Rights under the Fourteenth Amendment, therefore,; because it is clear that the petitioner was granted the right

**7.**

to be paroled, and that the respondent's have now revoked that right, in which the petitioner was at liberty, it is clear that the petitioner has now gained the right to challenge the respondent's revocation, which revoked his liberty interest, it is clear that the petitioner is with doubt, entitled to relief in this Court. See <u>Block v. Potter</u>, 631 F.2d 233, 235 (3rd Cir. 1980); and <u>Fernandex v. U.S.</u>, 941 F.2d 1488 (11th Cir. 1991).

    4. Petitioner finally states that the respondent's have also claimed that the petitioner has failed to demonstrate a claim of equal protection, which would entitle him to relief under the Equal Protection Clause.  The petitioner states that the respondent's claim that the petitioner fails to demonstrate that he is similarly situated to other inmates that are treated with lesser penalties under the same circumstances, that it would be difficult, if not impossible, for another inmate to have the similar circumstances regarding the amount of backtime for parole violators, because each recommitment is on a case by case basis.  In addition, the respondent's claim that although the petitioner boldly claims that he is being treated differently because of his race and religion, he fails to demonstrate an intentional or purposeful discrimination because of this membership.

    Petitioner now states that the respondent's are correct about one thing in their assumption; and that's that the petitioner will not be able to find anyone with the same "[E]xact" similarly situated to other inmate's that are treated with lesser penalties under the same circumstances.  But only because the petitioner is without counsel, and will have a hard time requesting that the respondent's produce an entire copy of the Pennsylvania Board of Probation & Paroles Statistical Status, on the amount of parolee's, which were granted re-parole, after being recommitted as both technical and convicted parole violators, from November 1994 to present. If these statistical studies were produced, the petitioner would be more than able to demonstrate a significant disparity in the treatment of race's and the favorable decisions which have been being made.  The petitioner will also be able to demonstrate that the respondent's did intentionally and purposefully discriminate against him, and those inmate's of certain races and religions.

    Petitioner states that this Honorable Court's should in its jurisdiction, order the respondent's to produce all parole file records of parolee's who were recommitted for both technical and convicted parole violations, and re-paroled, from November 1994 to the present time, so that the petitioner can demonstrate his claims.  Or order that counsel be appointed to assist the petitioner in requesting for such discovery of documentations.

    Petitioner again states that he is not the only complainant who has complained of the respondent's abuse of discretion.  There are actual Common Pleas Court Judge's who have agreed that the respondent's have abused their discretion, and have discriminated against parolee's by relying on their error with the (Robert "Mudman" Simon) case, which was a high profile case at the time of the petitioner's recommitment. **See Inmates of Neb. Penal & Correctional v. Greenholtz**, 436 F.Supp. 432, 439-40 (1976), and 567 F.2d 1368. **Also see Mayor of City Philadelphia v. Educational Eqyality League**, at 94 S.Ct. 1323, 1332-33 (1974), and **Harrison v. Springdale Water & Sewer Com'n**, at 780 F.2d 1422, 1426-28 (8th Cir. 1986).

    5. Petitioner finally states that the respondent's have once again denied the petitioner's recent Application For Re-Parole, without any

sufficient cause, and because of the petitioner's continuous challenges to the court's, per the respondent's prior decisions which violated the petitioner's constitutional rights to due process, as they have done for the second time, while interviewing the petitioner on his Application For Re-Parole.

Petitioner further states that the respondent's clearly were aware that the petitioner upon their review of his application, had been recommitted for five (5) years without any write-ups, or bad reports, and had completed every program which the Department of Corrections required him to do, and which he had completed voluntarily, but still decided to deny the petitioner without cause. This clearly proves the petitioner's claims that he has been denied Re-Parole for **Arbitrary** and **Capricious** reasons, because the petitioner met every considerable parole requirement there is to offer in whether or not to grant a parolee Re-Parole.

Therefore, for the board to deny the petitioner Re-Parole, without giving any <u>consideration</u> whatsoever, as to the petitioner's successful completion of institutional programs; the fact that the petitioner has been recommitted for a total of (5) years without getting any write-ups or bad reports, and the fact that the petitioner's criminal record, showed that the petitioner did not have any form of violent background, to make him any more a threat to society, than when he was first paroled in "1996", was clearly arbitrary and capricious. See <u>Coady v. Vaughn</u>, 770 A.2d 287, 290-93 (Pa. 2001).

WHEREFORE, The Petitioner respectfully requests that this Honorable Court's in its Jurisdiction, Grant his requested relief, and order the respondent's to correct the petitioner's maximum expiration date to read 12/2003 and to reverse and remand the respondent's prior orders filed on 08/30/1999 and 04/11/2001, with instructions to reconsider its prior decisions to Re-Parole the petitioner. It is also requested that this Honorable Court order the respondent's to produce an entire copy of all records from November 1994 to the present time, of all parolee's who were recommitted, and re-paroled after that first recommittal, as well as the parolee's race's. Or that this Honorable Court's Appoint Counsel to assist the petitioner in obtaining copies of those records. The petitioner respectfully requests that he be allowed to reserve his rights to later amend his petition if necessary.

Petitioner thanks this Honorable Court's for its time and consideration in this matter.

Respectfully Submitted,

*Carlos C. Woods*

Mr. Carlos Chico Woods, Pro-se
BY-9729  SCI-FRACKVILLE
1111 Altamont Blvd.
Frackville, Pa. 17931-2699

DATED <u>October 30, 2001</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA.

CERTIFICATE OF SERVICE OF AN INCARCERATED PERSON

I, Carlos Chico Woods, hereby Certify that I placed The attached Legal Documents in The hands of The prison official on The 30Th, day of October, 2001. For The immediate Forwarding To the Parties below; by Placing said documents in The Prison's U.S. mail Box:

MARY E. D'Andrea, Clerk
Clerk's Office
U.S. District Court
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108

Victoria S. Freimuth, Es
Deputy Attorney General
Office of Attorney General
Litigation section
15Th Floor, strawberry square
Harrisburg, PA 17120

I state that the following statement above is a True and correct one, under the Penalty of PerJury.

Respectfully Submitted
X. Carlos C. Woods
Mr. Carlos Chico Woods, Pro se
BY-9729 SCI. Frackville
1111 Altamont Blvd.
Frackville, PA 17931-2699

SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

CARLOS CHICO WOODS,                          :        FILED
            PETITIONER                       :     HARRISBURG. PA
    .V.                                       :
                                              :      NOV 0 6 2001
                                              :
PENNSYLVANIA BOARD OF                         :     MARY E. D'ANDREA. CLERK
PROBATION AND PAROLE                          :     Per
            RESPONDENTS                       : DOCKET NO.2503 CD 1999
                                              :

PETITION FOR ALLOWANCE OF APPEAL
NUNC PRO TUNC

        AND NOW COMES, the petitioner Carlos C.Woods, and respectfully
request that this Honorable Court Grant the petitioner's Petition for
Allowance of Appeal,for the following reasons stated below:

1) Petitioner states that The Commonwealth Court's failed to notify
him of the decision and order that was entered on July 21,2000.

2) Petitioner further states that the Commonwealth Court committed
reversible error, by their decision and order to the petitioner's
court appointed counsel Mr.Scott B. Bennett,after entering an order
granting appointed counsel's motion to withdraw from the petitioner's
case,and ordering the petitioner to file his own brief to the
court's. See the Court's order entered on march 28,2000 granting
counsel's motion to withdraw as counsel hereto attached as Exhibit
(A).

1

EXhibit (A).

3) Petitioner further states that he learned of the Commonwealth's decision,after he wrote one of the staff attorney's at the prothonotary's office of the Commonwealth Court,requesting a docket sheet,so that the petitioner could know where his case was at the time,Ms. Staff attorney's name was Debra Sue Rand.Ms.Rand wrote the petitioner back on September 02,2000 informing the petitioner that the Commonwealth Court had dismissed his case on July 21,2000,and entered an order and opinion affirming the Board's decision,but that the letter was sent to Mr.Scott B.Bennett,Esq.of the Public Defenders Office of Wayne County.See that letter hereto attached as Exhibit (B).

4) Petitioner finally states that because he was never notified by either the Commonwealth Court,Nor by court appointed counsel,his petition should be granted without further notice.

WHEREFORE,for the forgoing reasons stated above, and the exhibits that have been submitted in this petition,petitioner respectfully request that this Honorable Court's in it's jurisdiction grant his Petition For Allowance of Appeal,and appoint counsel to assist the petitioner in preparing his Appeal to this Honorable Court's The petitioner respectfully thanks this Honorable Court's for it's time and consideration in this case.

DATED:October 19,2000

Respectfully Submitted

x _Carlos C. Wood_

Mr.Carlos Chico Woods,Pro-s
BY-9729 P.O.BOX 256
Waymart Pa 18472-0256

2.

## PROOF OF SERVICE

I, the undersigned, verify that I have served a copy of this petition and any attachments thereof by U.S. mail to the following parties at the below listed addresses:

IRENE M. BIZZOSO, ESQ,
DEPUTY PROTHONOTARY
434 MAIN CAPITOL BUILDING
P.O. BOX 624
HARRISBURG, PA 17108

Respectfully submitted,

Carlos C. Wood

Dated: October 20/2000

S.C.I. Waymart
P.O. Box 256
Waymart, PA 18472-0256



## COMMONWEALTH of PENNSYLVANIA
### Board of Probation and Parole

P.O. Box 1661
3101 N. Front Street
Harrisburg, PA 17105-1661
(717) 787-6134

May 7, 1998

TO:      Mr. Mark Brown aka: Carlos C. Woods          PA Parole No. 5516X
         #363439                                      SCIWM No. BY9729
         M.P.C.J.F. Gander Hill State Prison
         1301 East 12th Street
         Wilmington, DE 19809

FROM:    Marlin F. Foulds
         Director
         Interstate Services


This will acknowledge your letter dated 05/01/98.

Since you have already been convicted and sentenced in Pennsylvania, and
the warrant lodged against you is for parole violation, the Interstate
Agreement on Detainers is **not** applicable to your situation.

Please refer to the U.S. Supreme Court Decision #97, Supreme Court, 274,
Moody v. Daggett.  This ruling clearly established that parole authorities
may wait until the defendant serves his sentence for the second crime
before they decide whether the commission of the crime merits revoking the
original parole grant. On July 2, 1985, the U.S. Supreme Court reaffirmed
this ruling.

To hold a hearing now would be a disservice to you.  You would not be in a
position to offer favorable information and documentation in your own
behalf.  The only thing that could be offered is the fact that you
experienced a new conviction.

When returned to Pennsylvania for a hearing at some later date you could
provide favorable information and documentation, such as favorable
institutional adjustment, successful completion of the other states'
institutional programs, etc., which could provide mitigation at your
hearing in Pennsylvania.

Our agency has **no** objections to your participation in **any** rehabilitative
programs deemed appropriate by the institutional authorities.

I trust this answers your inquiry in this matter.

MFF:SGKK/smk


EXhibit (B)

An Equal Employment Opportunity Employer
Accredited by the Commission on Accreditation for Corrections/American Correctional Association



COMMONWEALTH OF PENNNSYLVANIA

Board of Probation and Parole

1101 S. Front Street - Suite 5300
Harrisburg, PA 17104-2519

September 18, 1998

Mr. Mark Brown    (SBI No. 363439)
M. P. C. J. F. Gander Hill State Prison
    1301 East 12th Street
Wilmington, DE  19809

RE:  Parole No. 5516-X
Inst. No. BY-9729

Dear Mr. Brown:

    This will acknowledge receipt of your correspondence to Mr. Foulds which has been forwarded to this office for review and response.

    Please read Mr. Foulds' letter of 5-7-98 to you carefully.

    Please also be advised that:

1.  A parole violator convicted and sentenced to prison for another offense, must serve the sentence on parole and the sentence received while on parole in consecutive order.  In other words, your sentence in the State of Delaware and the sentence in Pennsylvania must run one after the other. These sentences cannot run concurrently.

2.  The Board does not take any position regarding your participation in any program while confined in a correctional institution since that decision solely depends on prison authorities.

3.  After completion of Delaware state sentence (paroled or maxed), you will be returned to Pennsylvania for a revocation hearing for Delaware conviction and if the Board elects to recommit you as a convicted parole violator and then you will be required to serve your          backtime (original sentence).

EXhibit (B)(i).

The Board detainer will stay as the Board wants your return to Pennsylvania for the service of backtime.

Sincerely,

FOR THE BOARD

Syed Ali
Parole Manager
Division of Case Analysis

SA:kkr

cc:  File

An Equal Employment Opportunity Employer
Accredited by the Commission on Accreditation for Corrections/American Correctional Association