**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
HARRISBURG, PA

JUN 2 0 2002

MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

| | | |
|---|---|---|
| **CARLOS CHICO WOODS** | : | |
| | : | |
| **Petitioner** | : | |
| | : | **CIVIL NO. 1: CV-01-1078** |
| | : | |
| **CHESNEY, et al.** | : | **(Judge Caldwell)** |
| | : | |
| **Respondents** | : | |

**RESPONDENTS' BRIEF IN OPPOSITION**
**TO PETITIONER'S BRIEF IN SUPPORT OF CAUSE**
**AND PREJUDICE AND MISCARRIAGE OF JUSTICE**

**INTRODUCTION**

Petitioner, Carlos Chico Woods, BY-9729, an inmate currently incarcerated at the State Correctional Institution at Frackville (SCI-Frackville) filed a pro se petition under 28 U.S.C. §2254 challenging the August 1999 decision of the Pennsylvania Board of Probation and Parole (Board) revoking his parole and imposing eighty-two (82) months of backtime. Petitioner claims that the denial of parole by the Board violates his constitutional rights under the 5th and 14th Amendments, regarding due process and equal protection, as well as Article 1, §26 of the Pennsylvania Constitution.

On September 12, 2001, Respondents filed an Answer to the Petition for Writ of Habeas Corpus.  On November 11, 2001, Petitioner filed a reply to Respondent's Answer.  On April 25, 2002, the Court issued a Memorandum and Order directing the Petitioner to file a brief addressing the issue of cause and prejudice and miscarriage of justice on the equal protection and due process claims.  On May 9, 2002, Petitioner filed a brief in support of cause and prejudice and/or miscarriage of justice but failed to serve the Respondent with a copy of his brief.  On June 4, 2002, the Court directed the Clerk to send a copy of Petitioner's brief to the Respondent and provided Respondent with fifteen (15) days to file an opposition brief.  This brief is filed in opposition to Petitioner's brief addressing the issue of cause and prejudice and miscarriage of justice on the equal protection and due process claims.

2

## ARGUMENT

In order to have the merits of a claim reviewed by federal court, which has been dismissed from state courts due to a procedural default, a petitioner must establish cause and prejudice justifying the state-court default or that a fundamental miscarriage of justice would result if the Court did not consider the merits. *See Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000); *see also Lines v. Larkins,* 208 F.3d 153, 166 (3d Cir. 2000). In order to show cause and prejudice justifying a state-court default, Petitioner must show: (1) the cause of his failure to raise his claims in state court; and (2) prejudice to his case as a result of that failure. *McClesky v. Zant,* 499 U.S. 467 (1991). If a petitioner fails to establish cause and prejudice the Court may review the claim if it can be shown that a fundamental miscarriage of justice would result from a failure to entertain the claim. *McCleskey,* 499 U.S. at 485; *see Werts,* 228 F.3d at 193. Petitioner fails to show either cause or prejudice or a fundamental miscarriage of justice; therefore, the petition for writ of habeas corpus should be dismissed.

**A.   Petitioner fails to show cause and prejudice justifying the state court default.**

Petitioner's ineffectiveness of counsel claim fails to establish cause and prejudice justifying the state court default. To satisfy the cause standard, Petitioner must demonstrate that some external objective factor impeded his

efforts to comply with the state's procedural rules and raise the claim(s) in state court. *Werts v. Vaughn*, 228 F.3d at 192-93; *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The exhaustion doctrine requires that an ineffectiveness claim be presented to the state court as a separate claim before it is used to establish a procedural default.  *Wertz v. Vaughn*, 228 F.3d at 192, *citing Murry v. Carrier*, 477 U.S. at 488-489.  In addition, an attorney's inadvertence is not 'cause' because the attorney is the petitioner's agent when acting or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk' of attorney error." *Coleman*, 501 U.S. at 753. [1]

Petitioner's ineffectiveness of counsel claim fails to establish an external factor as cause for failing to comply with Pennsylvania's procedural rules.  At one point, Petitioner claims that the lack of legal representation prevented is assertion of equal protection or due process.  However, Petitioner also asserts that his appointed counsel failed to argue Petitioner's claims because counsel believed the claims lacked merit.  (Plaintiffs' Brief, p. 1).  Petitioner is required to present his ineffectiveness of counsel claim to the state courts as an independent claim before it can be used to establish cause.  *Murry*, 477 U.S. at 488-489.  In addition, appointed counsel's inadvertence is not 'cause' because as petitioner's agent when

---

[1] The courts are to judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  *Strickland v.*

4

acting or failing to act, in furtherance of the litigation, the petitioner must 'bear the risk' of attorney error.  In this case, appointed counsel apparently believed that the claims lacked merit, therefore prohibiting him from presenting such claims to the Court.  Thus, Petitioner has failed to demonstrate that some external objective factor impeded his efforts to comply with the state's procedural rules and raise the claim(s) in state court.

Even if Petitioner could show cause, he does not establish that he has been prejudiced.  In order to establish prejudice, Petitioner must assert that something worked to his actual and substantial disadvantage at his revocation hearing as a result of the failure to raise the claims in state court.  *Luby v. Brady,* 1996 WL 328589 * 4 (D. Del.) *quoting United States v. Frady,* 456 U.S. 152, 170 (1982).  In the context of an ineffective assistance claim, prejudice occurs where there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Werts,* 228 F.3d at 193; *citing Schlup,* 513 U.S. at 326.

---

*Washington*, 466 U.S. 668, 690 (1984).

Petitioner fails to demonstrate anything that worked to his actual and substantial disadvantage at his revocation hearing as a result of the failure to raise the claims in state court. Court appointed counsel's letter states that the additional claims asserted by petitioner lacked merit. (See Attachment U). In addition, Petitioner fails to demonstrate that, but for counsel's deficient performance, the result of the proceeding would have been different. Therefore, Petitioner has failed to establish a cause and prejudice justifying the state-court default.

## B.    Petitioner failed to show a fundamental miscarriage of justice.

Since Petitioner has failed to establish a cause and prejudice justifying the state-court default, he must establish that a fundamental miscarriage of justice would result if the merits are not considered. To show a fundamental miscarriage of justice, the United States Supreme Court requires a petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326 (1985) (*quoting Murray v. Carrier*, 477 U.S. 478, 496 (1986)). In the context of parole revocation, Petitioner would have to show that it is more likely than not that no Board member would have decided that he had committed the offenses resulting in revocation of his parole. *Luby,* 1996 WL 328589, at *4 n.4.

6

Petitioner asserts that the miscarriage of justice in his case involves the effect on his original sentence and that he will be subject to double jeopardy by the Parole Board.  Petitioner fails to show that it was more likely than not that the Board would have decided the he had not committed the offenses which resulted in revocation of his parole.  Therefore, Petitioner has failed to show that the review of his federal habeas claim will result in a miscarriage of justice and the petition should be dismissed.

**WHEREFORE,** Petitioner fails to establish a cause and prejudice justifying the state-court default or that a fundamental miscarriage of justice and the writ of habeas corpus should be dismissed.

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**

*Victoria S. Freut*
**VICTORIA S. FREIMUTH**
**Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**Counsel for Respondents**

**OFFICE OF ATTORNEY GENERAL**
**Litigation Section**
**15th Floor, Strawberry Square**
**Harrisburg PA 17120**

**DATE: June 20, 2002**

1996 WL 328589
(Cite as: 1996 WL 328589 (D.Del.))

**H**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

Michael P. LUBY, Petitioner,

v.

M. Jane BRADY, Attorney General of the State of
Delaware, and Richard Kearney,
Warden, Respondents.

No. CIV. A. 95-26-SLR.

May 16, 1996.

Michael P. Luby, petitioner, pro se.

Loren C. Meyers, Chief of Appeals Division,
Department of Justice, Wilmington, Delaware, for
respondents.

*MEMORANDUM OPINION*

SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 Petitioner Michael Luby filed a petition for a writ
of habeas corpus pursuant to 28 U.S.C. § 2254 on
December 15, 1994. Petitioner claims that the
revocation of his probation violated the Interstate
Agreement on Detainers ("IAD"). (D.I. 1)
Respondents filed their answer, contending that
petitioner's procedural default in state court bars
consideration of his claims. Respondents also argue
that petitioner's claims are barred by the retroactivity
principle set out in *Teague v. Lane,* 489 U.S. 288
(1989). (D.I. 6) [FN1] On March 27, 1996, petitioner
moved for summary judgment. (D.I. 15) In their
reply, respondents repeat the arguments presented in
their answer and urge the court to dismiss the petition
without further proceedings. (D.I. 16)

II. BACKGROUND

Although the parties agree that no material facts are
in dispute, the sequence of events is somewhat
unclear. During 1984 and 1985, petitioner was
indicted on several counts of issuing bad checks. He
pled guilty to some of these charges, and was
sentenced to terms of incarceration followed by
probation. (D.I. 16 at 1-2) Petitioner was again
indicted in Sussex County in October 1987 on three

felony counts of issuing bad checks and in January
1988 on one count of felony theft. (D.I. 16 at 2) In
November 1987 petitioner was indicted in New
Castle County on bad check and felony theft charges.
(D.I. 16 at 2)

The record does not indicate what, if anything,
occurred between January 1988 and December 1992.
As of December 1992, petitioner was serving a
sentence at the Federal Correctional Institution at
Morgantown, West Virginia. (D.I. 15 at 1; D.I. 16 at
2) The record contains a "Detainer Action Letter"
dated December 17, 1992, from the Inmate Systems
Manager at Morgantown notifying probation officials
in Wilmington, Delaware that he had received notice
of a warrant on petitioner for probation violations.
(D.I. 15 at Ex. 3) According to respondents, New
Castle County prosecutors filed a detainer in January
1993 to have petitioner returned to Delaware for
disposition of the untried 1987 charges. (D.I. 16 at 2)
On April 17, 1993, petitioner filed a demand,
pursuant to the IAD, for prompt disposition of all
charges pending against him. (D.I. 15 at 1) In June
1993 the detainer was executed and petitioner was
returned to Delaware. (D.I. 15 at 1; D.I. 16 at 2)

At some point after the New Castle County detainer
was filed, petitioner became aware that Sussex
County intended to prosecute him for violating his
probation. (D.I. 8) [FN2] On August 3, 1993
petitioner moved to stop the Sussex County
prosecution on the grounds that the detainer covered
only the New Castle County charges. (D.I. 8) The
court stayed all Sussex County proceedings against
petitioner without prejudice to renew prosecution on
probation violations or new charges. The State
notified petitioner of its intention to renew. (D.I. 8)

In November 1993, an order nolle prosequi was
entered on the charges pending in New Castle
County. Petitioner was returned to the federal facility
in West Virginia on or around December 1, 1993.
(D.I. 15 at 2; D.I. 16 at 2) Roughly
contemporaneously to petitioner's return to West
Virginia, Sussex County prosecutors requested that
petitioner be returned again to Delaware. In February
1994, petitioner filed objections to his transfer and
requested a hearing. He argued that the Sussex
County detainer was on file before his return to West
Virginia and that the Sussex County charges should
have been disposed of before his return. (D.I. 15 at
Ex. 2) Petitioner's request for a hearing was denied;
he was returned to Delaware in February or March of
1994. (D.I. 15 at 2; D.I. 16 at 3)

*2 On March 2, 1994, petitioner moved to dismiss

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

the charges pending against him in Sussex County. (D.I. 8) Petitioner argued that the Uniform Detainer Act does not cover probation violations, and that the State's failure to list the Sussex County charges in the January 1993 detainer "violates the spirit and purpose of the Uniform Detainer Act and the Defendant's rights to due process and fair play in violation of the Delaware and United States Constitutions and 11 Del. Code § 2543(e)." (D.I. 8) The court denied petitioner's motion and on March 18, 1994 revoked his probation. (D.I. 8) Petitioner apparently remained incarcerated in Delaware until late April.

On April 15, 1994 petitioner delivered to the mailroom at SCI his notice of appeal to the Delaware Supreme Court. (D.I. 17) The court received petitioner's notice on April 19, one day after the deadline. (D.I. 10) After providing petitioner with opportunity to show cause, the court rejected petitioner's arguments for an enlargement of time and denied the appeal as untimely. (D.I. 10)

After being returned to West Virginia and completing his federal sentence, it appears that petitioner was to serve a West Virginia state sentence, but was granted parole so that he could be returned to Delaware. (D.I. 15 at 3) Petitioner challenged the detainer before the Circuit Court in West Virginia on the same grounds that he has raised in the present petition. The court denied his request for relief, and the West Virginia Supreme Court refused his appeal. (D.I. 15 at 3) [FN3] While still in West Virginia fighting extradition to Delaware, petitioner filed the present petition. He has since been returned to Delaware. (D.I. 15 at 3; D.I. 16 at 4)

III. DISCUSSION

A. Exhaustion Requirement

Before the court can review petitioner's claims, the court must ascertain whether petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b). In making this determination, the court should inquire as to whether there is an "absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). In a case where the court determines that the petitioner has not exhausted all state remedies, the court may also determine whether "recourse to state collateral review whose results have effectively been predetermined ..." would justify review by the district court. Castille v. Peoples, 489 U.S. 346, 350 (1989).

The requirement that a petitioner exhaust all

available state remedies prior to seeking federal habeas corpus relief is statutorily mandated under 28 U.S.C. § 2254(b) and (c). Comity is the rationale underlying the exhaustion requirement, which allows state courts the first opportunity to pass on alleged defects in the criminal proceedings leading to the conviction at issue. Recognizing that principles of federal-state comity must restrain unnecessary "[f]ederal intrusions into state criminal trials," Engle v. Isaac, 456 U.S. 107, 128 (1982), the United States Supreme Court has held that the exhaustion requirement must be "rigorously enforced." Rose v. Lundy, 455 U.S. 509, 518 (1982); see also Santana v. Fenton, 685 F.2d 71, 77 (3d Cir. 1982), cert. denied, 459 U.S. 1115 (1983).

*3 To exhaust state remedies, a petitioner must have raised before the highest state court the factual and legal premises of the claims for relief he asserts in the federal proceeding. Chaussard v. Fulcomer, 816 F.2d 925 (3d Cir.), cert. denied, 108 S. Ct. 139 (1987); Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986).

"It is not enough that the petitioner presents to the state court the facts upon which a federal claim is based." The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987) (citations omitted). It is not necessary, however, that the state's highest court decide petitioner's claims on the merits before those claims can be considered exhausted. Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir. 1989).

In the case at bar, petitioner raised the facts and the legal theory on which he now relies in motions before the trial court and in his appeal to the Delaware Supreme Court. His claims, therefore, have been exhausted.

B. Procedural Default

Where, as here, petitioner's own default is responsible for a state court's failure to examine petitioner's claims on the merits, a federal court may not reach the merits unless petitioner establishes cause for the default and actual prejudice stemming from the alleged violation of the petitioner's federal rights, or that a "fundamental miscarriage of justice" will result from the failure to hear the petitioner's claims. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Wainwright v. Sykes, 433 U.S. 72, 87 (1977). [FN4] To permit petitioner to proceed in federal court

1996 WL 328589
(Cite as: 1996 WL 328589 (D.Del.))

Page 5

in such a case would undermine the principles of comity and federalism that underlie the exhaustion requirement. *Coleman,* 501 U.S. at 722.

Petitioner claims that he has not defaulted his state court remedies because he raised his claims before the Circuit Court of Fayette County, West Virginia and the West Virginia Supreme Court of Appeals. This reasoning is inconsistent with the purpose of the exhaustion requirement, which is to give the courts of the state in which the petitioner was convicted the first opportunity to review the laws and procedures under which the conviction was obtained. *See generally Braden v. 10th Judicial Circuit Court of Kentucky,* 410 U.S. 484 (1973); *Caswell v. Ryan,* 953 F.2d 853, 857 (3d Cir. 1992). The court, therefore, may not reach the merits of the petition currently before it unless petitioner has shown cause and prejudice.

### 1. Cause

The Supreme Court has held that "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him...." *McCleskey v. Zant,* 499 U.S. 467, 493 (1991), *quoting Murray v. Carrier,* 477 U.S. 478, 488 (1986) (emphasis added).

Petitioner contends that his default should be excused because he delivered his notice of appeal to the mailroom at SCI prior to the deadline for filing. He urges the court to apply the "mailbox rule" in use in the federal courts, which deems a prisoner's *pro se* notice of appeal filed when he hands it over to prison officials. *Houston v. Lack,* 487 U.S. 266 (1988). The Delaware state courts, however, have consistently held that no paper is deemed filed until it is received by the clerk of the court. *Carr v. State,* 554 A.2d 778 (Del. 1989). Asserting that a "mailbox rule" would be more reasonable, as petitioner does here, does not constitute cause for his default. It merely begs the question of whether the state's procedural requirement should bar a federal court from hearing petitioner' claims absent a showing of cause and prejudice. The court concludes, therefore, that petitioner has not established cause for his default.

### 2. Prejudice

\*4 To excuse his procedural default, petitioner must demonstrate that he suffered actual prejudice as a result of the alleged violations of federal law presented in his habeas application. *Coleman v. Thompson,* 501 U.S. at 750; *Caswell,* 953 F.2d at 857. To demonstrate actual prejudice, petitioner must

show that the errors at his trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (defining actual prejudice in the context of a 28 U.S.C. § 2255 motion). Petitioner has made no contention that the ultimate outcome, *i.e.,* his imprisonment for violating his probation, would not have occurred but for the violations of the IAD he claims. Therefore, he has failed to establish prejudice.

### IV. CONCLUSION

Having failed to establish either cause for or prejudice from his procedural default, petitioner may not have his claims heard on the merits by this court. His motion for summary judgment must, therefore, be denied; his petition will be dismissed and habeas corpus relief will be denied. An order consistent with this memorandum opinion shall issue.

FN1. William C. Duncil, Warden of the federal institution in West Virginia where petitioner was incarcerated at the time he filed his petition, moved independently for dismissal. (D.I. 12) Upon learning that petitioner had been moved to the Sussex Correctional Institution ("SCI") in Georgetown, Delaware, the court granted respondent Duncil's motion. (D.I. 13) Richard Kearney, Warden of SCI, has been substituted as a respondent.

FN2. Docket Items 8 and 10 are packets of unnumbered state court documents.

FN3. Because the parties have not submitted any records of the West Virginia proceedings, the precise time, disposition, and grounds raised in these proceedings are not known.

FN4. To excuse the cause and prejudice requirements, petitioner would have to show that he is likely actually innocent of the acts for which his probation was revoked. *Smith v. Murray,* 477 U.S. 527, 535 (1986). Petitioner has made no such claim.

END OF DOCUMENT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CARLOS CHICO WOODS**                :
                                      :
    **Petitioner**               :
                                      :        **CIVIL NO. 1: CV-01-1078**
                                      :
**CHESNEY, et al.**                   :        **(Judge Caldwell)**
                                      :
    **Respondents**              :

## CERTIFICATE OF SERVICE

I, Victoria S. Freimuth, Deputy Attorney General for the Commonwealth of

Pennsylvania, hereby certify that on June 20, 2002, I served a true and correct

copy of the foregoing Respondents' Brief in Opposition to Petitioner's Brief in

Support of Cause and Prejudice and Miscarriage of Justice, by causing it to be

deposited in the United States Mail, first-class postage prepaid to the following:

> **Carlos Chico Woods, BY-9729**
> **SCI Frackville**
> **1111 Altamont Blvd.**
> **Frackville, PA  17931-2699**


_____
**VICTORIA S. FREIMUTH**
**Deputy Attorney General**